#221069
FILED
2007 OCT 11 PM 2:20
STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED CONSUMERS CLUB, INC. and DIRECTBUY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PRIME TIME MARKETING MANAGEMENT, INC., DELL CRAAYBEEK, and BRENDA CRAAYBEEK, <br><br> Defendants. | Case No. 2:07CV358 |

### COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF

Plaintiffs, United Consumers Club, Inc. ("UCC") and DirectBuy, Inc. ("DirectBuy"), by their attorneys, for their Complaint for Preliminary and Permanent Injunctive Relief, Damages and Other Relief ("Complaint") against Defendants, Prime Time Marketing Management, Inc. ("Prime Time"), Dell Craaybeek and Brenda Craaybeek (the "Craaybeeks") (collectively "Defendants"), state as follows:

### Nature of the Action

1.  This is an action for infringement of the "DIRECTBUY" trademark, brought under the trademark laws of the United States, for unfair competition, and for breach of contract. UCC and DirectBuy seek, among other things, a preliminary and permanent injunction enjoining Defendants' wrongful and unlawful use of UCC's federally registered trademark. UCC and DirectBuy also seek damages for Defendants' infringing and other wrongful conduct, and the attorneys' fees and costs they have incurred and will incur in prosecuting this action, as provided by statute and the parties' written Franchise Agreement.

CHGO1\31103944.1

## Parties

2. UCC is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in Merrillville, Indiana. UCC is the owner of, among other things, the federally registered trademark DIRECTBUY (the "DIRECTBUY Mark") under which UCC operates a members-only consumer buying club organization.

3. DirectBuy is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Merrillville, Indiana. DirectBuy is a subsidiary of UCC. DirectBuy franchises others to operate local DIRECTBUY members-only buying clubs in approximately 150 locations in 33 states across the United States and in 6 provinces in Canada.

4. The Craaybeeks are residents and citizens of the State of Ohio. The Craaybeeks are principals of a home improvement business in Dayton, Ohio named "Home Improvement Design Gallery." Home Improvement Design Gallery sells products in competition with products offered by and available through DirectBuy Centers.

5. Prime Time is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Montgomery County, Ohio. Prime Time formerly operated a franchised DIRECTBUY Center in Ohio. Dell Craaybeek is the President and, upon information and belief, the sole shareholder of Prime Time.

## Jurisdiction and Venue

6. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the common law.

7. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338 and 1367, in that this is a civil action involving claims arising under

the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy, and further in that the plaintiffs and the defendants are citizens of different States and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

8. Venue and jurisdiction are proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and paragraph 18(G) of the Franchise Agreement at issue specifies jurisdiction and venue in any state or federal court sitting in Lake County, Indiana.

## UCC's Federally Registered Trademark

9. UCC and DirectBuy have developed, and are the sole and exclusive owners of, unique and uniform systems relating to the establishment and operation of DIRECTBUY members-only buying clubs. DIRECTBUY buying clubs offer a wide range of home furnishings and home improvement products exclusively to DIRECTBUY members, including, but not limited to, furniture, flooring, carpeting, cabinetry, window treatments, appliances, lighting, home improvement products, and home décor.

10. To identify the source, origin, and sponsorship of their brand of members-only buying clubs and the products and services they offer, and to distinguish those members-only buying clubs, products, and services from businesses, products, and services established, made, offered, and sold by others, UCC and DirectBuy have extensively used the DIRECTBUY Mark.

11.     The DIRECTBUY Mark is registered on the Principal Register of the United States Patent Office (Registration No. 3,047,273). The registration of the DIRECTBUY Mark continues in full force and effect.

12.     UCC and DirectBuy have continuously used the DIRECTBUY Mark in interstate commerce in connection with the promotion, sale, and franchising of DIRECTBUY members-only buying clubs and the promotion and sale of the products and services they offer throughout the United States, including the State of Ohio, since the date of its registration.

13.     UCC and DirectBuy have the exclusive right to use and license the DIRECTBUY Mark and derivations thereof, as well as the unique and uniform system with which franchisees offer products and services to the public under the DIRECTBUY Mark. Pursuant to franchise agreements entered into by and between DirectBuy and its authorized and approved franchisees, DirectBuy grants franchises to qualified persons to own and operate DIRECTBUY members-only buying clubs, and licenses its franchisees to use the DIRECTBUY Mark and UCC's and DirectBuy's uniform system, but only in such manner and at such locations as are expressly authorized by DirectBuy.

14.     DirectBuy and its franchisees use the DIRECTBUY Mark as the mark and trade identity by which the products and services offered by DirectBuy and its franchisees are distinguished from other businesses, including other members-only buying clubs, and the products and services offered by them.

15.     DirectBuy and its authorized franchisees have extensively advertised and promoted DIRECTBUY members-only buying clubs and the products and services they offer under the DIRECTBUY Mark throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and

services offered by DirectBuy and its franchisees under the DIRECTBUY Mark have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including the State of Ohio.

### The Parties' Written DirectBuy Franchise Agreement

16. On or about November 17, 1986, United Consumers Club Franchising Corporation ("UCCFC") entered into a written Franchise Agreement (the "Franchise Agreement") with D.D.O. Management, Inc. ("D.D.O. Management") pursuant to which UCCFC granted D.D.O. Management a franchise to operate a "United Consumers Club" members-only buying club in Ohio for a twenty (20) year term. (A true and correct copy of the Franchise Agreement is annexed hereto as Exhibit A and incorporated herein by reference.) Through a series of corporate name changes, UCCFC is now, and since 2004 has been DirectBuy, Inc.

17. Pursuant to certain assignments, Prime Time is the most recent franchisee under the Franchise Agreement, and operated a DirectBuy franchise pursuant to that Agreement until May of 2007. (A true and correct copy of the United Consumers Club Franchise Agreement Assignment dated April 1, 1992, is annexed hereto as Exhibit B and incorporated herein by reference.)

18. Dell Craaybeek personally guaranteed Prime Time's obligations under the Franchise Agreement and agreed to be personally bound by and liable for each and every provision therein pursuant to a written Guaranty and Assumption of Obligations (the "Personal Guaranty"). (A true and correct copy of the Personal Guaranty is annexed hereto as Exhibit C and incorporated herein by reference.)

19. On or about April 24, 2003, Prime Time entered into a DirectBuy Amendment with DirectBuy (which was named UCC TotalHome, Inc. at the time). Pursuant to the DirectBuy Amendment, Prime Time agreed to transition to the DIRECTBUY Mark. (A true and correct copy of the DirectBuy Amendment is annexed hereto as Exhibit D and incorporated herein by reference.)

20. On November 13, 2006, the parties agreed to extend the term of the Franchise Agreement through and including February 17, 2007. On February 6, 2007, DirectBuy extended the term of the Franchise Agreement to June 1, 2007. True and correct copies of the letter agreements extending the Franchise Agreement are annexed hereto as Exhibits E and F.

21. Under the Franchise Agreement, Prime Time acknowledged that it had "no proprietary interest whatsoever in the Marks licensed to Franchisee under [the] Agreement and that Franchisee's right to use the Marks [was] derived solely from [the] Agreement and [was] limited to the conduct of [its] business pursuant to and in compliance with [the] Agreement and all applicable specifications, standards and operating procedures prescribed by the Company from time to time during the term of the Franchise." (Franchise Agreement (Exhibit A), ¶5(A).) Prime Time also acknowledged that "[a]ny unauthorized use of the Marks by Franchisee shall constitute an infringement of the rights of the Company and its licensor in and to the Marks." (Franchise Agreement, (Exhibit A), ¶5(A).)

22. Prime Time further acknowledged and agreed that upon the termination of the Franchise Agreement it would, among other things, (i) not directly or indirectly identify itself or any other business as a current or former DirectBuy business; (ii) refrain from using the DIRECTBUY Mark; (iii) notify the telephone company and all listing agencies of the termination of its right to use any telephone number and any telephone directory listings

associated with the DIRECTBUY Mark and to authorize the transfer of same to DirectBuy; and (iv) discontinue using any and all advertising materials, forms, and stationery supplies displaying the DIRECTBUY Mark. (Franchise Agreement (Exhibit A), ¶¶16(B).)

23. The parties agreed in the Franchise Agreement that if a judicial proceeding was required to enforce the Franchise Agreement, the prevailing party would be entitled to reimbursement of its costs and expenses, including reasonable attorneys' fees. (Franchise Agreement (Exhibit A), ¶18(F).)

### The Termination of the Franchise Agreement

24. Based on Prime Time's various breaches of the Franchise Agreement, and consistent with the express terms of Section 15(B) of the Franchise Agreement, DirectBuy served Prime Time a written Termination Notice on May 11, 2007, terminating the Franchise Agreement effective upon delivery. DirectBuy permitted Prime Time to continue using the DIRECTBUY Mark for a short period of time following termination in order to facilitate the processing of members' orders at Prime Time's former DirectBuy showroom until DirectBuy could make suitable alternative arrangements for member service in the Dayton market. By letter dated June 27, 2007 to counsel for Defendants, DirectBuy advised Defendants that they could no longer use the DIRECTBUY Mark and that they had to comply with all of their post-termination de-identification obligations under the Franchise Agreement. (A true and correct copy of the June 27, 2007 letter is annexed hereto as Exhibit G and incorporated herein by reference.)

**Defendants' Trademark Infringement and Breaches of Contract**

25. Notwithstanding the termination of the Franchise Agreement, and despite the clear provisions of that Agreement and notice from DirectBuy, Prime Time and the Craaybeecks are using the DIRECTBUY Mark in connection with the operation of their "Home Improvement Design Gallery" business, are marketing and promoting that business through the use of the DIRECTBUY Mark, are holding that business out to the public as an authorized DIRECTBUY buying club, and are passing off that business and the products and services offered by that business – many of which are the same as or similar to the products and services offered through their former DirectBuy franchised business – as being authorized by UCC and/or DirectBuy when they are not.

26. In addition, and despite the termination of the Franchise Agreement, Prime Time and Dell Craaybeek have failed and refused to perform their post-termination obligations under the Franchise Agreement, including their obligations (a) not to directly or indirectly identify themselves or any other business as a current or former DirectBuy business; (ii) to refrain from using the DIRECTBUY Mark; (iii) to notify the telephone company and all listing agencies of the termination of their right to use any telephone number and any telephone directory listings associated with the DIRECTBUY Mark and to authorize the transfer of same to DirectBuy; and (iv) to discontinue using any and all advertising materials, forms, and stationery supplies displaying the DIRECTBUY Mark.

27. In fact, not only have Prime Time and Dell Craaybeek not transferred the phone numbers and telephone directory listings associated with their former DIRECTBUY center to DirectBuy, but they, along with Brenda Craaybeek, continue to use several of those telephone numbers and telephone directory listings in connection with the operation of their Home

Improvement Design Gallery business. For example, defendants have arranged that all phone calls made to the former DirectBuy Center phone number, are automatically diverted to the phone of defendants' Home Improvement Design Gallery business. In addition, certain on-line telephone directory listings for Defendants' former DIRECTBUY center contain links to information regarding Defendants' Home Improvement Design Gallery business and/or display Home Improvement Design Gallery's name and logo. Further, on-line telephone directory listings for Home Improvement Design Gallery contain advertisements for Defendants' former franchised DirectBuy business.

28. Both during the term of the Franchise Agreement, and since its termination, defendants operated a business called ClosetsDirectToYou, which defendants market as "The #1 way to buy closets for your home" or "The #1 way to buy storage for your home". The type-face, font, black-and-red color scheme, and the style of ClosetsDirectToYou copy the type-face, font, black-and-red color scheme and the style of DirectBuy's own logo. Both the DirectBuy logo and the DirectBuy slogan "The #1 way to buy direct for your home" enjoy common law trademark protection because DirectBuy has been consistently using that logo and slogan in its business. The defendants' copying of the DirectBuy type-face, font, black-and-red color scheme, style, and slogan all violate DirectBuy's common law trademark rights.

29. Defendants also continue to contact former DIRECTBUY members using DIRECTBUY stationery displaying the DIRECTBUY Mark, and holding themselves out as representing DirectBuy.

30. Defendants' continued use of the DIRECTBUY Mark is without the license or consent of Plaintiffs and has caused and is likely to cause mistake, confusion, and deception in the minds of the public as to source, affiliation, and sponsorship.

31. So long as Defendants continue their unlawful use of the DIRECTBUY Mark in connection with the operation of their business, consumers have no practical way of knowing that Defendants' business is not affiliated with, or sponsored, authorized or endorsed by, Plaintiffs. As a result, any consumer dissatisfaction with the business, or with the products and services offered in connection therewith, will be attributed to Plaintiffs and their entire franchise system.

32. Defendants have received actual notice that continued use of the DIRECTBUY Mark is a violation and infringement of Plaintiffs' rights in the DIRECTBUY Mark and have constructive notice of UCC's rights in the DIRECTBUY Mark and the registrations thereof pursuant to 15 U.S.C. § 1072. Defendants' continued infringement is willful, malicious, fraudulent, and deliberate.

## COUNT I
## LANHAM ACT - TRADEMARK INFRINGEMENT

33. Plaintiffs repeat and reallege paragraphs 1 through 32 of their Complaint as and for this paragraph 33, as if fully set forth herein.

34. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the DIRECTBUY Mark, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the DIRECTBUY Mark, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

35. As a direct and proximate result of Defendants' infringement, Plaintiffs have been and are likely to be substantially injured in their businesses, including their goodwill and reputations, resulting in lost revenues and profits, and diminished goodwill.

36. Plaintiffs have no adequate remedy at law because the DIRECTBUY Mark is unique and represents to the public Plaintiffs' identities, reputations, and goodwill, such that damages alone cannot fully compensate Plaintiffs for Defendants' misconduct.

37. Unless enjoined by the Court, Defendants and those acting in concert with them will continue to use and infringe the DIRECTBUY Mark, to Plaintiffs' irreparable injury. This threat of future injury to Plaintiffs' business identities, goodwill, and reputations requires injunctive relief to prevent Defendants' continued use of the DIRECTBUY Mark, and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT II
## LANHAM ACT - UNFAIR COMPETITION

38. Plaintiffs repeat and reallege paragraphs 1 through 37 of their Complaint as and for this paragraph 38, as if fully set forth herein.

39. Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

40. As a direct and proximate result of Defendants' unfair competition, Plaintiffs have been irreparably injured, including injury to their goodwill and reputations, resulting in lost revenues and profits and diminished goodwill.

41. Plaintiffs have no adequate remedy at law because the DIRECTBUY Mark is unique and represents to the public Plaintiffs' identities, reputations, and goodwill, such that damages alone cannot fully compensate Plaintiffs for Defendants' misconduct.

42. Unless enjoined by the Court, Defendants will continue to compete unfairly with Plaintiffs, to Plaintiffs' irreparable injury. This threat of future injury to Plaintiffs' business identities, goodwill, and reputations requires injunctive relief to prevent Defendants' continued unfair competition and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT III
### BREACH OF CONTRACT – POST-TERMINATION OBLIGATIONS

43. Plaintiffs repeat and reallege paragraphs 1 through 42 of their Complaint as and for this paragraph 43, as if fully set forth herein.

44. Prime Time and Dell Craaybeek have failed and refused to perform their post-termination obligations under the Franchise Agreement, including their obligations (a) not to directly or indirectly identify themselves or any other business as a current or former DirectBuy business; (ii) to refrain from using the DIRECTBUY Mark; (iii) to notify the telephone company and all listing agencies of the termination of their right to use any telephone number and any telephone directory listings associated with the DIRECTBUY Mark and to authorize the transfer of same to DirectBuy; and (iv) to discontinue using any and all advertising materials, forms, and stationery supplies displaying the DIRECTBUY Mark.

45. To the contrary, and while they have no contractual right or license to do so, Defendants continue to use the DIRECTBUY Mark.

46. Unless and until Prime Time and Dell Craaybeek are ordered to perform their post-termination obligations under the Franchise Agreement, Plaintiffs are likely to be

substantially injured in their businesses, including their goodwill and reputations, resulting in lost revenues and profits, and diminished goodwill, for which Plaintiffs have no adequate remedy at law.

47. This threat of future injury to Plaintiffs' business identities, goodwill, and reputations requires that Prime Time and Dell Craaybeek be ordered to perform their contractual post-termination obligations under the Franchise Agreement to prevent Prime Time's and Dell Craaybeek's continued breach and to ameliorate and mitigate Plaintiffs' injuries.

48. DirectBuy has at all times complied with and fully performed all of its obligations under the Franchise Agreement and the DirectBuy Amendment.

## COUNT IV
## **BREACH OF FRANCHISE AGREEMENT**

49. Plaintiffs repeat and reallege paragraphs 1 through 48 of their Complaint as and for this paragraph 49, as if fully set forth herein.

50. The DirectBuy concept is that members pay a fee to join a DirectBuy Center, such as the defendants' DirectBuy Center in Ohio, in order to have access to a vast array of top-quality, brand-name products from over 700 manufacturers and suppliers, without paying traditional retail markup. The savings are tremendous. That is the concept on which United Consumers Club and DirectBuy are founded; it is the concept which DirectBuy and all its franchisees, including Prime Time when it was a franchisee, advertise; and it is the fundamental reason on which people rely in deciding to join DirectBuy.

51. In addition to the 700+ manufacturers available through DirectBuy, Inc., each DirectBuy franchisee has the option of establishing additional supplier relationships with local providers, thereby enhancing the extent of members' product selection and purchasing options.

As with DirectBuy's own manufacturers and suppliers, franchisees which set up local provider relationships must make the local products and services available to members without retail markup.

52. Unknown to DirectBuy, while Prime Time was still a franchisee, it established local provider relationships with a number of local vendors. Also unknown to DirectBuy, instead of providing the local providers' goods and services directly to members without markup, the defendants set up a company called Home Improvement Wholesale Distributors, Inc., which, on information and belief, now conducts business as Home Improvement Design Gallery. The defendants then channeled all member orders for products and services from local providers into Home Improvement Wholesale Distributors, Inc. The defendants, through their Home Improvement Wholesale Distributor entity, then secretly added substantial markup to the local provider products before invoicing the DirectBuy members.

53. The net effect of the foregoing structure was that the DirectBuy members in Prime Time's Center in fact paid substantial undisclosed and improper retail markups on products purchased from local providers through the DirectBuy Center. The total of those improper, concealed markups exceeded $780,000. The defendants' scheme of marking up local provider products was the principal basis for DirectBuy's termination of the Franchise Agreement.

54. Because they have unjustly enriched themselves by the secret, unlawful markups they exacted from the members, the defendants must make restitution to the members of all amounts they overcharged. DirectBuy has demanded that defendants disgorge the member overcharges, but defendants have flatly refused. Their failure to disgorge and to refund the

overcharges now that they have been caught at it, affronts DirectBuy's essential concept and impairs and impugns the DirectBuy brand.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray for the following relief against Defendants:

A.  A preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them, from using the DIRECTBUY Mark, or any trademark, service mark, logo or trade name that is confusingly similar to the DIRECTBUY Mark, including ClosetsDirectToYou;

B.  A preliminary and permanent injunction ordering Prime Time and Dell Craaybeek, their agents, servants and employees, and those people in active concert or participation with them, to comply with their post-termination obligations under the Franchise Agreement, including, but not limited to, their obligations to:

  1. not directly or indirectly identify themselves or any other business as a current or former DirectBuy business;

  2. refrain from using the DIRECTBUY Mark;

  3. notify the telephone company and all listing agencies of the termination of their right to use any telephone number and any telephone directory listings associated with the DIRECTBUY Mark and to authorize the transfer of same to DirectBuy; and

  4. discontinue using any and all advertising materials, forms, and stationery supplies displaying the DIRECTBUY Mark;

C.  That Defendants be required to file with the Court and to serve upon Plaintiffs' counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

D.  That Defendants account and pay over to Plaintiffs all gains, profits, and advantages derived by them as a result of their infringement of the DIRECTBUY Mark, breach of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

E.  That Defendants pay to Plaintiffs such damages as Plaintiffs have sustained by reason of said trademark infringement, unfair competition and breach of contract; and that, because of the willful nature of said infringement, the Court enter judgment for Plaintiffs for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.   An award of the costs and expenses, including reasonable attorneys' fees, incurred by Plaintiffs in connection with this action as provided for by statute and the Franchise Agreement; and

G.   Entry of this Court's Order mandating that defendants disgorge all overcharges taken from DirectBuy members and make a full and complete refund of all such overcharges; and

55.   H.   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues.

UNITED CONSUMERS CLUB, INC. and DIRECTBUY, INC.

By: _C. Joseph Yast_

One of their Attorneys

C. Joseph Yast
General Counsel
DirectBuy, Inc.
8450 Broadway
Merrillville, IN 46410
Phone: 219/648-7337
Fax: 219/648-7377
Email: JoeYastLaw@comcast.net

*Of Counsel*:

John F. Verhey
John A. Hughes
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Phone No.:   312-368-4000
Fax No.:   312-236-7516