```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION


UNITED CONSUMERS CLUB, INC.;    )
DIRECTBUY, INC.,                )
                                )
          Plaintiffs            )
                                )
     v.                         )   Case No. 2:07 cv 358
                                )
PRIME TIME MARKETING MANAGEMENT )
INC.; DELL CRAAYBEEK; BRENDA    )
CRAAYBEEK,                      )
                                )
          Defendants            )
```

OPINION AND ORDER

This matter is before the court on the Motion to Dismiss in Accordance with Fed.R. 13(a) Alternative to Defendants' Motion to Change Venue filed by the defendants, Prime Time Marketing Management, Inc. and Dell and Brenda Craaybeek, on October 24, 2007 (DE 15), and the Motion for Change of Venue Alternative to Defendants' Motion to Dismiss in Accordance with Fed.R. 13(a) filed by the defendants on October 24, 2007 (DE 17)[1]. For the reasons set forth below, both motions are **DENIED**.

Background

United Consumer Club, which has become DirectBuy, markets a franchise system. Franchisees operate buying clubs and offer memberships in the club. Each individual club's members purchase products, generally those related to home furnishings and im-

---

[1] Though titled a motion to dismiss, as described more fully below, the relief sought by the defendants is non-dispositive and, if it were granted, would require a stay or transfer of this action. Accordingly, this court will address both motions pursuant to this district's general order 2007-10.

provement, at discount prices. In exchange for the right to operate a DirectBuy franchise, the franchisee pays an initial fee and on-going royalties from the sale of club memberships.

DirectBuy maintains relationships with various manufacturers of home improvement products. Through these relationships, DirectBuy provides access to products for franchises to sell to its members at discounted prices. In addition, franchisees have the option to establish relationships with local providers of related products and services that also would be offered through the club.

On September 11, 2007, Prime Time Marketing Management, Inc. and its owners, Dell and Brenda Craaybeek, filed suit against DirectBuy in the Court of Common Pleas, Montgomery County, Ohio. (Motion for Change of Venue, Exh. 1-L)  In the complaint, Prime Time related that it had been a party to a franchise agreement with DirectBuy since 1986. In November 2006, the parties extended their agreement beyond its initial terms through February 17, 2007. No further extensions were entered into, and in May 2007, DirectBuy gave Prime Time notice that its franchise agreement was terminated. Prime Time's complaint listed eight causes of action against DirectBuy, seeking to collect fees paid to DirectBuy by Prime Time customers and compensation for DirectBuy's use of Prime Time's employees and facilities. Prime Time sought recovery under theories of tortious interference with business relationships, unjust enrichment, and breach of implied contracts.

On October 11, 2007, DirectBuy filed the complaint in this

matter. DirectBuy alleged that Prime Time breached portions of the franchise agreement that prohibited Prime Time from making certain retail markups to the costs of items that it sold to members. DirectBuy further asserted Lanham Act claims based on allegations that Prime Time continued to use the DirectBuy trademark after the termination of the parties' relationship. One day after filing this cause of action, DirectBuy removed the Ohio state court action to the United States District Court for the Southern District of Ohio.

Two related motions are pending in this court. First, Prime Time seeks dismissal of this action, reasoning that the claims brought here by Direct Buy constitute compulsory counterclaims that were required to have been brought in the Ohio action. In addition, as an alternative, Prime Time seeks the transfer of this action to the Southern District of Ohio. Among its responses, DirectBuy asserts that this matter is governed by the forum selection clause of the parties' franchise agreement.

## Discussion

Federal Rule of Civil Procedure 13(a) provides that "[a] pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The aim of the rule "is to prevent multiplicity of actions and to resolve all disputes arising out of common matters in a single lawsuit." ***Jupiter Aluminum Corp. v. Home Insurance Company***, 181 F.R.D. 605,

3

607 (N.D. Ill. 1998)(*citing* **Southern Construction Co. v. Pickard**, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962)).

Over the years, a series of tests have been utilized to define the phrase "transaction or occurrence," and the Seventh Circuit has focused upon a "logical relationship" inquiry. **Burlington Northern Railroad Company v. Strong**, 907 F.2d 707, 711-12 (7th Cir. 1990)("In short, there is no formalistic test to determine whether suits are logically related. A court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds."). *See also* **In re Price**, 42 F.3d 1068, 1073 (7th Cir. 1994). In assessing this logical relation-ship, the court avoids "a wooden application of the common transaction label" and instead engages in a careful examination of the factual allegations underlying each claim. **Burlington**, 907 F.2d at 711. *See also* **Super Natural Dis- tributors, Inc. v. Muscletech Research and Development**, 140 F.Supp.2d. 970, 976 (E.D. Wis. 2001).

Generally, the failure to assert a compulsory counterclaim bars the claim in future litigation. **Ross ex rel. Ross v. Board of Education of Township High School District 211**, 486 F.3d 279, 284 (7th Cir. 2007)(*citing* **Baker v. Gold Seal Liquors, Inc**., 417 U.S. 467, 469 n.1, 94 S.Ct. 2504, 2506 n.1, 41 L.Ed.2d 243 (1974))("Again, these counterclaims are 'compulsory' only in the sense that a failure to include them in the suit means that they are thereafter barred."). However, courts faced with parallel

4

proceedings have resorted to the issuance of stays, transfers, or dismissals without prejudice, providing leave to file the counterclaims in the other proceedings. *See generally* 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* §1418 (2d ed. 1990)("Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action."). Often, preference is given to the court in which the related claim first was filed. **Asset Allocation and Management Co. v. Western Employers Ins. Co.**, 892 F.2d 566, 573 (7th Cir. 1989) ("There is, no doubt, a presumption that subject to the principles that govern requests for transfer to a more convenient forum, the first case should be allowed to proceed and the second should be abated; and certainly Judge Conlon was right not to countenance the simultaneous litigation of identical claims in two federal courts. But the presumption is rebuttable."). *See also* **Trippe Manufacturing Company v. American Power Conservation Corp**., 46 F.3d 624, 629 (7th Cir. 1995) (noting that the Seventh Circuit does not adhere rigidly to a first-to-file rule); **Champion Laboratories, Inc. v. Burch**, No. 06-CV-4031-JPG, 2006 WL 3370174, *2 (S.D. Ill. Nov. 21, 2006).

DirectBuy offers little resistance to the general assertion that this cause of action is comprised of compulsory counterclaims beyond the statement that "the only overlapping claim between this action and the Ohio action is the overcharge dis-

5

pute." (Plaintiffs' Opposition to Defendants' Motion for Change of Venue, p. 19) However, even a narrow reading of Rule 13(a)'s use of the phrase "transaction or occurrence" cannot be so constricted as to make it synonymous with an exact identity of claims. See *In re Price*, 43 F.3d at 1073 ("As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.").

The Ohio and Indiana actions are sufficiently related to fall within the reach of Rule 13(a). Both causes of action arise in the factual setting of the termination of the parties' franchise agreement. Specifically, both cases focus upon allegations that each party breached its obligations to the other - for instance to cease use of a trademark or to pay fees owed pursuant to the agreement - in the wake of this terminated agreement.

In addition, the court does not agree with DirectBuy's assertion that because no Ohio *federal* action was pending on October 11, 2007, when it filed this action, Rule 13 has no application to this matter. Rule 13 bars a plaintiff from filing in federal court a claim that should have been filed as a counterclaim in another action. DirectBuy, without explanation, has assumed that this rule has no application when the counterclaims were required in the course of a state court proceeding. This assumption is not correct. See e.g. **Springs v. First National Bank of Cut Bank**, 835 F.2d 1293, 1296 (9th Cir. 1988); **Sokkia Credit Corporation v. Bush**, 147 F.Supp.2d 1101-1105 (D. Kan.

6

2001)(noting that whether federal law or state law applies, the result is the same; both operate to bar claims that were counter-claims in the earlier action.). *See also* Ohio Civil Rule 13(a). Consequently, the parties' dispute over which cause of action was first-filed largely is irrelevant.

However, this irrelevance also can be attributed to the presence of a forum selection clause in the franchise agreement.[2] In construing a contract, the court will treat a forum selection clause "like any other contractual provision and hence enforce it unless it is subject to any of the sorts of infirmity, such as fraud or mistake, that justify a court's refusing to enforce a contract." *IFC Credit Corporation v. Aliano Brothers General Contractors, Inc*., 437 F.3d 606, 610 (7th Cir. 2006); *Muzumbar v. Wellness International Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006); *Preferred Capital, Inc. v. Power Engineering Group, Inc*., 112 Ohio St.3d 429, 431, 860 N.E.2d 741, 744 (2007)("[A] forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside.").

The franchise agreement contained the following provision entitled "Governing Law/Consent to Jurisdiction," which stated that Prime Time

> agrees that [DirectBuy] may institute any
> action against [Prime Time] arising out of or
> relating to this Agreement in any state or
> federal court of general jurisdiction in Cook

---

[2] To the extent that this matter involves construction of the parties' contract, neither party has addressed the applicable law. The agreement itself appears to call for the application of Ohio law. There is no indication that inconsistent conclusions result under either application.

7

> County, Illinois or in Lake County, Indiana, and [Prime Time] irrevocably submits to the jurisdiction of such court and waives any objection he may have to either the jurisdiction or venue of such court.

(Complaint, Exh, 3, p. 22)

Prime Time misreads this provision in at least two ways when it argues that this is a "permissive" clause which is not mandatory because of the use of the word "may." Prime Time further misstates the provision when it isolates the phrase "any state or Federal court" and ignores the immediately following phrase, limiting venue to courts only "in Cook County, Illinois or in Lake County, Indiana." The effect of these two sentences is to give DirectBuy the ability to file suit in the state or federal system of either jurisdiction. The mandatory nature of this provision is made clear by the next sentence, which "irrevocably" prohibits Prime Time from objecting to venue in these two locations.

The mandatory nature of this provision is not altered by Prime Time's subsequent argument that the contract is silent as to where Prime Time should file suit. While the point is accurate, it also is irrelevant. Prime Time's motion before this court specifically challenges the venue of a court named in the agreement, regardless of any remedy Prime Time may pursue in the Ohio action. Accordingly, the presence of a valid forum selection clause that prohibits Prime Time from objecting to venue in this court is enforceable, notwithstanding the potential that the forum selection clause regards only suits initiated by DirectBuy.

8

See ***Publicis Communication v. True North Communications, Inc***., 132 F.3d 363, 366 (7th Cir. 1997)("If the parties promise to litigate a dispute only in a particular forum, a party to the contract cannot seek to bar the litigation in that forum because the claim was not presented in some other forum.").

The court notes that this clause, on its face, appears to create a waiver of venue only with respect to an action initiated by DirectBuy and leaves unanswered whether this clause has any effect on the Ohio proceeding instituted by Prime Time. Because in this matter the court faces only an action instituted by DirectBuy, this court is not required to wade into that question.

Consideration of this clause is an important factor in considering Prime Time's arguments in support of its motion to transfer venue pursuant to 28 U.S.C. §1404(a). See ***Stewart Organization, Inc. v. Ricoh Corp***., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988)("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."), However, it is not the sole consideration. This section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Consequently, a party seeking transfer under this statute must show that "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the conve-

9

nience of the parties, the convenience of the witnesses, and the interest of justice." *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995). When the context includes a valid forum selection clause, the convenience of the parties no longer may be asserted as grounds supporting a transfer. *Heller Financial, Inc. v. Midwhey Powder Company, Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Northwestern National Insurance Company v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990)("But one who has agreed to be sued in the forum selected by the plaintiff has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings."). However, the court still assesses a transfer in light of the interests of justice and the convenience of witnesses. *Heller Financial*, 883 F.2d at 1293.

Generally, in considering the private interests, the court looks to "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *First National Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 912 (N.D. Ill.2006). *See also DePuy Orthopaedics, Inc. v. Gault South Bay, Inc.*, No. 3:07-CV-425, 2007 WL 3407662, *8 (N.D. Ind. Nov. 13, 2007). The public interests that are relevant to an analysis under §1404(a) include the court's familiarity with applicable law, the efficiency with which the court may resolve the matter, and the desirability of

10

resolving disputes in the region in which they arose. *First National Bank*, 447 F.Supp.2d at 912; *Travel Supreme Inc. v. Nver Enterprises, Inc*., No. 3:07 CV 194, 2007 WL 2962641, * 10 (N.D. Ind. Oct. 5, 2007). The court considers these factors in a "flexible and individualized analysis." *Stewart Organization, Inc*., 487 U.S. at 29, 108 S.Ct. at 2244. However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re National Presto Industries*, 347 F.3d 662, 664 (7th Cir. 2003).

Leaving aside Prime Time's arguments that are based on their own convenience or costs - because the court already has concluded these arguments were waived under a valid forum selection clause - Prime Time's remaining arguments fall short of tipping this balance. For instance, Prime Time argues that it has "key witnesses" who reside in Ohio who would testify on its behalf. Similarly, Prime Time argues that this court is without authority to compel unwilling witnesses to testify under Federal Rule of Civil Procedure 45. However, Prime Time has offered no argument that these concerns disproportionately fall upon them, as opposed to DirectBuy. *K & F Mfg. Co. Inc. v. Western Litho Plate & Supply Co.*, 831 F.Supp. 661, 664 (N.D. Ind. 1993)("Where transfer merely would shift convenience (and conversely, inconvenience) from one party to another, transfer should not be granted.").

Prime Time also argues that the deference given to the plaintiffs' choice of forum is diminished because the events complained of did not occur in Indiana. If true, this is an

accurate statement. See *Masterspas, Inc. v. Master Spas of Utah, Inc.*, No. 1:05-CV-362, 2006 WL 2524121, *3 (N.D. Ind. Aug. 30, 2006). However, resolution of this matter is likely to include factual inquiry into questions that include, among others, the grounds for DirectBuy's termination as well as Prime Time's response to this termination. Conduct that took place in both Indiana and Ohio will be relevant. Accordingly, it cannot be said that Indiana is without connection to this cause of action.

The public interests are even less tilted in either direction in this matter. Prime Time notes that Ohio law applies and states that the Ohio court is likely more familiar with Ohio law. However, there is no indication that in this breach of contract action the court must confront complex or unsettled areas of Ohio law. See *Travel Supreme Inc.*, 2007 WL 2962641 at *11 ("[T]his is a run of the mill contract dispute; this court is often called upon to interpret another state's law."). Further, based upon undisputed national statistics, this court generally moves cases to trial and ultimate disposition more quickly than courts in the Southern District of Ohio. See http://jnet.ao.den/img/assets/5938/C05Mar07.pdf (last visited January 4, 2008). Finally, it cannot be stated that an Ohio forum has any greater interest in adjudicating a claim involving one of its residents than an Indiana court.

Accordingly, each consideration yields, at most, neutral results. In light of the Supreme Court's admonition that a valid

forum selection clause occupy a central figure in this analysis, there is no basis under which to transfer this case.

_____

For the foregoing reasons, the Motion to Dismiss in Accordance with Fed.R. 13(a) Alternative to Defendants' Motion to Change Venue filed by the defendants, Prime Time Marketing Management, Inc. and Dell and Brenda Craaybeek, on October 24, 2007 (DE 15) and the Motion for Change of Venue Alternative to Defendants' Motion to Dismiss in Accordance with Fed. R. 13(a) filed by the defendants on October 24, 2007 (DE 17), are **DENIED**.

ENTERED this 11th day of January, 2008

                                         s/ ANDREW P. RODOVICH
                                            United States Magistrate Judge