```
                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF INDIANA
                        HAMMOND DIVISION
```

UNITED CONSUMERS CLUB, INC.;   )
DIRECTBUY, INC.,               )
                               )
          Plaintiffs           )
                               )
     v.                        )   Case No. 2:07 cv 358
                               )
PRIME TIME MARKETING MANAGEMENT)
INC.; DELL CRAAYBEEK; BRENDA   )
CRAAYBEEK,                     )
                               )
          Defendants           )
*****************************)
PRIME TIME MARKETING MANAGEMENT)
INC.; DELL CRAAYBEEK,          )
                               )
          Plaintiffs           )
                               )
     v.                        )   Case No. 3:08 cv 60
                               )
DIRECTBUY, INC., BETA FINANCE  )
COMPANY, INC.; UNITED CONSUMERS)
CLUB, INC.;                    )
                               )
          Defendants           )

## OPINION AND ORDER

This matter is before the court on the Motion to Compel Discovery [DE 147] filed by Prime Time Marketing Management, Inc. and Dell Craaybeek, on February 12, 2009, and the Motion for Extension of Time to Complete Discovery [DE 148] filed by Prime Time Marketing Management, Inc. and Dell Craaybeek, on February 17, 2009. For the following reasons, the Motion to Compel Discovery is **GRANTED IN PART, DENIED IN PART AS MOOT,** and **DENIED IN PART.** The Motion for Extension of Time to Complete Discovery is **GRANTED IN PART** and **DENIED IN PART.**

## Background

On May 23, 2008, Prime Time and Dell Craaybeek ("Prime Time") served its First Request for Production of Documents and First Set of Interrogatories on United Consumer's Club and DirectBuy ("DirectBuy"). On October 7, 2008, DirectBuy responded to Prime Time's First Set of Interrogatories and Request for Production of Documents.

On December 5, 2008, Prime Time informed DirectBuy that it found deficiencies with its responses to the First Set of Interrogatories and First Request for Production of Documents. DirectBuy claimed that the information sought was either irrelevant to any claims or defenses or that such information was privileged. Prime Time disagreed with DirectBuy and asked DirectBuy to address Interrogatories 1, 2, 5, and 15 with greater detail. It also sought to gain requested document numbers 12, 16, 19, 37, 39, 65, 68, 69, 70, and a privilege log. DirectBuy responded on December 12, 2008, and stated that it would produce a privilege log and supplement the answers to Interrogatories 1, 2, and 5. Furthermore, DirectBuy agreed to produce documents under Document Request No. 67, regarding an expert's curriculum vitae. DirectBuy further stated that, in reference to Document Request No. 68, the documents were not yet all identified and that the document referenced in the initial disclosure already had been made available to Prime Time. Finally, DirectBuy refused to answer further Interrogatory 15, indicating that Prime Time was given access to examine and copy documents responsive to that request.

In response to this communication, Prime Time stated that it would seek to compel information not provided by December 22, 2008. Again, the requested information was not received, and so on January 27, 2009, Prime Time again confirmed with DirectBuy that it would seek court intervention if the outstanding documents and responses were not produced by February 2, 2009. That same day, DirectBuy sought to speak with Prime Time regarding the outstanding requests, but Prime Time indicated that there was "nothing further to 'talk about'" regarding the outstanding discovery requests. However, on February 4, 2009, Prime Time communicated in writing with DirectBuy, stating that a good faith attempt to resolve the conflict outside of court had been made. Once again, Prime Time set a new deadline, February 9, 2009.

On February 12, 2009, Prime Time filed this Motion to Compel Discovery. On February 25, 2009, DirectBuy provided supplemental responses to Interrogatories 1, 2, and 5 and a privilege log, eliminating the need for this court to consider these interrogatories, production of the privilege log, and production of Document Request No. 65.

On February 17, 2009, Prime Time filed its Motion for Extension of Time to Complete Discovery, which closed on February 27, 2009. The motion also requests an extension of the expert witness disclosure deadline of March 13, 2009, which had been extended on two other occasions. The extensions both seek a new August 31, 2009, deadline. Prime Time seeks this extension in order to depose DirectBuy's key witnesses and to prepare expert

3

witness evaluations. DirectBuy opposes this extension due to lack of good cause, stating that Prime Time refused to attend three scheduled deposition dates and that Prime Time has had DirectBuy's expert report for six weeks but has yet to identify its own experts.[1] In response, Prime Time contends that Direct-Buy agreed to a Monday-Tuesday or Thursday-Friday schedule for deposition dates, but when it came to scheduling the depositions within the designated time frame DirectBuy wanted to keep depositions to one day and would not offer a consecutive, two-day schedule. Therefore, Prime Time has not deposed DirectBuy's employees because there has not been a consecutive, two-day deposition schedule established between the two parties within the given time frame.[2] Furthermore, Prime Time contends that it could not provide expert disclosures because it was waiting on discovery materials from DirectBuy in order to make a determination about damages.

This Motion for Extension of Time is not the first one filed in this case. Previously, this court granted a motion to extend the discovery deadline to June 30, 2008 and February 23, 2009. This court also extended the deadline for defendants' expert witness disclosures and reports to February 20, 2009 and for

---

[1] Prime Time cancelled the first deposition date because it was going to file for bankruptcy protection but then did not. Former co-counsel Larry White cancelled the second date because of his schedule. Prime Time cancelled the third date because it insisted on having two days for depositions, while DirectBuy offered only one day.

[2] Correspondence between the two parties insinuates that the depositions did not occur post-deadline because there was concern that a joint motion for an extension needed to be filed and it was not. Instead, Prime Time filed this unilateral motion.

plaintiff's expert witness disclosures and reports to December 22, 2008. These expert witness disclosure deadlines were later extended to March 13, 2009 and January 12, 2009, respectively.

## Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615, 619 (S.D. Ind. 2002) (*quoting* *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Borom v. Town of Merrillville*, 2009 WL 1617085 (N.D. Ind. 2009) (*citing* *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)). *See also* *Adams v. Target,* 2001 WL 987853 at *1 (S.D. Ind. 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *Shapo v. Engle,* 2001 WL 629303 at *2 (N.D. Ill. May 25, 2001) ("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 IBEW*, 2009 WL 1325103 at *8 (N.D. Ind. 2009) (*citing* *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); *McGrath v. Everest National Insurance Co.*, 2009 WL 1325405 at *3 (N.D. Ind. 2009); *Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services*, 2009 WL 692224 at *5 (N.D. Ind. 2009). The objecting party must show with specificity that the request is improper. *Cunningham v. Smithkline Beecham*, 206 F.R.D. 474, 478 (N.D. Ind. 2009) (*citing* *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478 (*citing* *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506 at *6 (N.D. Ill. Aug. 2, 2006)) (internal quotations and citations omitted). The court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court."

***Berning v. UAW Local 2209***, 242 F.R.D. 510, 512 (N.D. Ind. 2007) (*examining **Patterson v. Avery Dennison Corp.,*** 281 F.3d 676, 681 (7th Cir. 2002) (internal quotations and citations omitted)).

Because of the parties' resolution of some of the discovery issues, Prime Time's Motion to Compel Discovery asks the court to compel DirectBuy to respond to requests for production of documents.[3] Therefore, the only requests remaining at issue are Document Requests No. 16, 19, 37, and 70. DirectBuy argues the document requests are not subject to discovery because the remaining documents are not relevant to any claim or defense at issue in this litigation, and even if it were assumed there was some marginal relevancy, the burden and expense of production outweighs the likely benefits.

First, Prime Time's Document Request No. 16 seeks information about local vendors, suppliers, and merchant numbers. Specifically, it asks for "[a]ll documents that refer or relate to any and all vendors other than DirectBuy's national suppliers that provided goods or services to DirectBuy Members, including but not limited to all local vendors, outside suppliers and merchant members from January 1, 2000, to date." DirectBuy admits that initially it believed this request was "overbroad and harassing" because it seemed to request information about every local vendor used by a DirectBuy franchisee. Upon further exami-

---

[3]DirectBuy provided the privilege log, supplemental responses to the interrogatories, and stated that it had no documents related to Document Request No. 65, thus making these issues now moot. This occurred, however, after Prime Time filed its motion to compel and months after DirectBuy initially agreed to send it.

nation, however, DirectBuy determined that the request was narrow and that it only sought information about the DirectBuy Members who purchased products from Prime Time. With this limitation, DirectBuy produced the audit report completed by Integrity Assurance. DirectBuy further argues that any other local vendor information relevant to this case is in Prime Time's possession, and therefore there is no further information for this court to compel. In reply, Prime Time argues that the information is relevant to its defenses to the trademark and unfair competition claims brought by DirectBuy. It offers that the information sought could lead to evidence about DirectBuy's failure to exercise reasonable diligence to enforce its trademark, which is a laches defense to the trademark infringement and unfair competition claims. In order to narrow the inquiry, Prime Time seeks to compel only documents identifying all unapproved local vendors with whom DirectBuy allowed its franchises to conduct business since 2002.

In *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999), the court stated that in order to establish the application of laches in a particular case, the party asserting the defense must show: "(1) an unreasonable lack of diligence by the party against whom the defense is asserted, and (2) prejudice arising therefrom." *Hot Wax, Inc.*, 191 F.3d at 820. When the trademark holder fails to exercise reasonable diligence to enforce its trademark, laches bars the right to an accounting for profits and damages. *Chattanoga Manufacturing, Inc. v. Nike,*

*Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002) (explaining that for laches to apply, "the defendant must show that the plaintiff had actual or constructive notice of the defendant's use of an allegedly infringing mark, that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time"). The information that Prime Time seeks to obtain – documents identifying unapproved local vendors with whom DirectBuy allowed its franchises to conduct business since 2002 – is relevant to the first prong of the laches test. Such information could prove Prime Time's argument that DirectBuy knew of local vendor relationships and allowed them to occur with regularity, thus showing that DirectBuy slept on its rights. *See* ***Chattanoga Manufacturing, Inc.***, 301 F.3d at 792 ("The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them."). Therefore, the court will grant the motion to compel Document Request No. 16.

Second, Document Request No. 19 seeks documents related to the prices for merchandise or services offered by DirectBuy's approved vendors. The initial request asked for production of documents and communications referring or relating "to the prices or charges for merchandise or services offered by DirectBuy's approved vendors." DirectBuy argues that the information sought bears no relevance to any claim, and that its only connection would be to support the assertion that Home Improvement Wholesale Distributors – the local vendor used by Prime Time and solely

9

owned by Dell Craaybeek - was able to get the same products at lower prices than DirectBuy. Furthermore, DirectBuy contends that even if the information was relevant, the costs and burden of producing this voluminous amount of information would outweigh any benefit. Prime Time counters that the information is relevant to disprove DirectBuy's claim that Prime Time "overcharged" members. In the interest of compromise, Prime Time has offered to narrow the request to include only "price lists" or "discount factors" offered to DirectBuy by its national vendors since 2002. It further argues that the information is relevant to prove that Home Improvement's prices were lower than those provided by DirectBuy's national vendors, who provided alleged kickbacks to DirectBuy, and thus negates DirectBuy's reason for terminating Prime Time's contract. Prime Time requests this information in order to prove DirectBuy's motive for terminating the contract between the parties.

If a party "has a legal right to terminate the contract . . . its motive for exercising that right is irrelevant." *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.,* 223 F.3d 585, 589 (7th Cir. 2000). Furthermore, a duty to deal in good faith does not justify an inquiry into motive. *Tuf Racing Products, Inc.,* 223 F.3d at 589. See *American Roller Co., LLC v. Foster-Adams Leasing, LLP*, 2006 WL 1371441 *2 (N.D. Ill. 2006) (denying a motion to compel production of documents and depositions in order to prove a motive in a breach of contract case because the subject matter would have to encompass additional

10

parties and transactions not at issue in the particular case). Because Prime Time seeks proof of motive for DirectBuy's contract termination, this information is not discoverable for Prime Time's asserted purpose. Therefore, the motion to compel Document 19 is denied.

Third, Prime Time seeks "[a]ll documents that refer or relate to the 'Merchandise Account' referred to in Paragraphs 21 and 22 of the Answer and Counterclaim." Prime Time argues that this information is relevant to their eleventh defense, asserting "recoupment and set-off." DirectBuy argues that this information is irrelevant because it is unrelated to the counterclaims and damages sought by Prime Time.

DirectBuy's statement, however, is incorrect. Count Four of the Counterclaims asserts that DirectBuy maintained control over funds belonging to Prime Time. DirectBuy agrees with Prime Time that money in the account included handling fees, and handling fees were the property of Prime Time. Thus, the court will grant Prime Time's motion to compel production of Document Request No. 37.

Fourth, Prime Time seeks to compel production of "[a]ll documents that refer or relate to any complaints related to any issues concerning the business operations of DirectBuy, Prime Time or the Craaybeeks from January 1, 2002, to date, including complaints related to memberships, products or services." DirectBuy refuses to produce the requested records because the request is irrelevant, vague, ambiguous, and unduly burdensome.

11

DirectBuy characterizes the request as so broad that it encompasses an almost endless amount of information about the company. Finally, DirectBuy argues that the burden of contacting over 165 franchisees and searching records related to 800 national vendors, 585 employees, and 400,000 DirectBuy members worldwide and millions of transactions outweigh the value of the information. In response, Prime Time offers to limit the request to "member complaints regarding national vendors, including but not limited to complaints about expensive merchandise, long delivery periods, limited product selection, the need for services, and damaged merchandise," because this information supports Prime Time's basis for creating a local vendor relationship with Home Improvement in order to remedy customer complaints that Prime Time contends is an issue for other franchises as well.

"[I]f a party is to resist discovery as unduly burdensome, it must 'adequately demonstrate the nature and extent of the claimed burden' by making a 'specific showing as to how disclosure of the requested documents and information would be particularly burdensome.'" *Boyer v. Gildea*, 2008 WL 4911267, *4 (N.D. Ind. 2008)(internal citations omitted). As previously articulated by DirectBuy's response to Document Request No. 19, tendering such information would cost approximately $750,000 and 200-500 hours of labor. *See, e.g.*, *Brodsky v. Humana, Inc.*, 2009 WL 1956450 (N.D. Ill. 2009) (denying plaintiff's motion to compel production of a document request that would cost about $80,000 and two years to produce and another document request that "would

require someone to look through a large number of old contract agreements that exist in both paper and electronic form"). Seemingly, the costs and the hours of producing information under Prime Time's modified request would only increase DirectBuy's time and expense because it would require DirectBuy to go through the records and sort the information based on the type of complaint. Although Prime Time's modified request may reduce the production costs in terms of paperwork, it does little to reduce the hours required to sift through millions of transactions.

Furthermore, the information sought is overbroad and irrelevant to the matter before the court. Prime Time contends that it needs this information to illustrate the basis for Prime Time's relationship with Home Improvement. Nevertheless, the request does not limit the inquiry to the Dayton-area store, but instead fishes for information about every DirectBuy store. The expansion of discovery to cover millions of transactions among thousands of persons only to prove that the Dayton store had a need for lower-priced, more readily available products is not relevant to the current action. Such a request also is overbroad. Furthermore, the information Prime Time needs to prove the purpose of the Dayton store's relationship with Home Improvement is already in its possession. For these reasons, the court denies Prime Time's motion to compel discovery of Document Request No. 70.

To summarize, the court grants in part and denies in part Prime Time's Motion to Compel Discovery. The court grants Prime

Time's motion to compel DirectBuy to produce documents as requested under Document Request Nos. 16, as modified by Prime Time's Reply Brief, and 37. The court denies Prime Time's motion to compel DirectBuy to produce documents as requested by Document Request Nos. 19 and 70. The court also finds that DirectBuy has satisfactorily complied with defendant's remaining requests.

In Prime Time's Motion to Compel, Prime Time seeks to obtain attorney fees for the time spent in procuring answers and documents via this order to compel. "The great operative principle of Rule 37(a)(4) is that the loser pays." *McGrath,* 2009 WL 1325405 at *3; *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994)(*quoting* Charles Alan Wright & Arthur R. Miller, 8 *Federal Practice and Procedure* §2288 at 787 (1970)). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *McGrath*, 2009 WL 1325405 at *3; *Rickels*, 33 F.3d at 787. Any loser may avoid payment by showing that his position was substantially justified. *McGrath*, 2009 WL 1325405 at *3; *Rickels*, 33 F.3d at 787. The failure to disclose is sanctionable and properly remedied by an order compelling discovery. Federal Rules of Civil Procedure 37(a)(2)(B), (a)(3), (a)(4); *McGrath v. Everest National Insurance Co.*, 2008 WL 2518710 at *13 (N.D. Ind. 2008) (*citing* *Lucas v. GC Services, L.P.*, 226 F.R.D. 328, 329-30 (N.D. Ind. 2004)).

The record indicates that Prime Time made a good faith effort on numerous occasions to obtain this information without court intervention. Although DirectBuy indicated that it would cooperate, it was not until Prime Time filed a motion to compel that DirectBuy followed through with its months-old promise. Understandably, it takes time to compile information and to respond to requests, and some of the information was not yet available when requested. However, some of Prime Time's requests and DirectBuy's promises to produce information were almost six months old before voluntary compliance occurred.[4]

Nonetheless, it also is notable that some of Prime Time's initial requests were overbroad. These were not remedied until after DirectBuy responded to the motion to compel. Therefore, the joint culpability in these discovery issues does not warrant an imposition of fees. However, the parties here are **WARNED** that any subsequent discovery motions will include court imposed attorney's fees.

Next, this court must consider whether to extend the discovery deadline. Prime Time argues that the discovery and expert witness deadlines should be extended by six months because Prime Time was unable to prepare for the depositions of DirectBuy's key witnesses and also was unable to prepare expert witness evaluations because of DirectBuy's delay in providing information. DirectBuy contends that it fully cooperated with Prime Time dur-

---

[4]This includes a promise to deliver a privilege log, required by the Federal Rules of Civil Procedure, for the responses to the First Set of Interrogatories that DirectBuy answered on October 7, 2008.

ing the discovery process, that Prime Time unilaterally cancelled deposition dates for DirectBuy's employees, and that it later refused DirectBuy's offer to allow the depositions to occur after the discovery deadline. Furthermore, DirectBuy opposes the motion for an extension of the discovery deadline in regards to the expert witness disclosure because of Prime Time's dilatory conduct.

Federal Rule of Civil Procedure 16(b) provides that a "schedule shall not be modified except upon a showing of good cause and by leave" of the court. *Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th Cir. 2002); *Gernaat v. Four Star Taxi, Inc.,* 2008 WL 835698 at *1 (N.D. Ind. 2008). Good cause sufficient for altering discovery deadlines is demonstrated when a party shows that, "despite their diligence, the established timetable could not be met." *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).

Prime Time contends that the deadline should be extended in order for it to depose DirectBuy's witnesses. Prime Time argues that it has diligently attempted to schedule a two-day, back-to-back deposition schedule either at the beginning or end of a work week, as agreed to by DirectBuy. However, during the course of discovery, the parties have failed to make such an arrangement. Although scheduled on dates falling after the close of discovery, DirectBuy finally offered a consecutive, Thursday-Friday deposition arrangement. Even then, the parties did not agree to depose witnesses. Prime Time encouraged DirectBuy to file a joint

16

motion to extend the discovery deadline so that the newly-offered dates of March 12-13 would be within the court-ordered discovery time frame. However, the parties failed to file a joint motion to continue discovery to ensure that the depositions would occur on the March dates set by DirectBuy. Instead, Prime Time filed this motion.

Moreover, the parties have not cooperated throughout the discovery process in order to ensure that each party has the information necessary to properly depose witnesses. Eight months passed between Prime Time's service of the First Set of Interrogatories and DirectBuy's response to the identity and expected testimony of its witnesses - merely four days prior to the discovery deadline. In light of this recent and belated production of information, Prime Time needs more time to consider whether additional discovery, such as depositions of other witnesses identified in the response, should occur. Prime Time would be denied a reasonable opportunity to respond to this information if the court did not to extend the deadline. Thus, in light of DirectBuy's delay in providing Prime Time with a list of expected witnesses and testimony until four days prior to the discovery deadline, the court will extend the deadline for sixty (60) days after the entry of this order.

In addition, it is apparent from the communications offered into evidence that the driving force behind the Motion for an Extension of the Discovery Deadline is the continuing struggle between the parties to work together to find a mutually accept-

17

able arrangement for deposition of DirectBuy's witnesses within the scheduled discovery time frame. Local Rule 30.1 states, "the attorneys shall make a good faith effort to schedule depositions in a manner which avoids scheduling conflicts." The spirit of the rule encourages cooperation among parties. DirectBuy and Prime Time have not *seriously* cooperated in order to resolve this ongoing conflict within the original discovery deadlines, and therefore the court directs the parties to abide by the spirit of the law and come to a mutually acceptable deposition schedule within the new discovery time frame.

Finally, Prime Time asks for an extension of the expert witness disclosure deadline for the third time. Prime Time argues that although they obtained a financial expert witness, the expert was unable to complete his report without critical information DirectBuy refused to provide. Specifically, Prime Time notes a need for DirectBuy's expert damage calculations (produced three weeks prior to the deadline) and other material at issue in the Motion to Compel. DirectBuy opposes the motion because it is the third motion to extend the deadline, Prime Time had knowledge of the 2007 Integrity Assurance audit, and Direct-Buy made the Integrity Assurance's Rule 26 report available eight weeks prior to the deadline. Furthermore, DirectBuy opposes the extension because it would be prejudiced by an extension of this deadline.

In order to obtain an extension, the moving party must show good cause. Prime Time bases its need for an extension on

calculation damages, which were provided by DirectBuy three weeks prior to the disclosure deadline, and other information in the Motion to Compel. Prime Time has not shown that good cause exists to extend the expert witness disclosure deadline by six months. Prime Time possessed DirectBuy's detailed damages calculation for three weeks prior to the deadline and has not explained why that time frame was not long enough for the financial expert to complete the evaluation. Prime Time has not established its diligence in obtaining an expert witness and report by the established deadline. However, in light of the other discovery problems, the expert deadline will be extended 30 days from the entry of this order.

Therefore, the court will extend the discovery deadline for sixty (60) days after the entry of this order to accommodate Prime Time's need to depose DirectBuy's key witnesses. On this issue, the Court directs the parties to embrace the spirit of Local Rule 30.1 - one of mutual, good-faith cooperation - in scheduling these depositions. As for the request to extend the deadline for expert witness disclosures, Prime Time has thirty (30) days to provide DirectBuy with its expert witness disclosures.

_____

For the foregoing reasons, the Motion to Compel Discovery [DE 147] filed by Prime Time Marketing Management, Inc. and Dell Craaybeek, on February 12, 2009, is **GRANTED IN PART, DENIED IN PART AS MOOT,** and **DENIED IN PART.** The court **GRANTS IN PART** as it

relates to Document Requests Nos. 16 and 37; **DENIES IN PART AS MOOT** as it relates to Document Request No. 65; and **DENIES IN PART** as it relates to Document Request No. 19 and 70 the initial Motion to Compel Pursuant to Fed.R.Civ.P. 37, and **GRANTS** reasonable attorney fees related to the order to compel discovery. The Motion for Extension of Time to Complete Discovery [DE 148] filed by Prime Time Marketing Management, Inc. and Dell Craaybeek, on February 17, 2009, is **GRANTED IN PART** and **DENIED IN PART.**

ENTERED this 25th day of September, 2009

                                        s/ ANDREW P. RODOVICH
                                        United States Magistrate Judge